IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEONA LYNDA TAYLOR,<br><br>        Plaintiff,<br><br>    vs.<br><br>WILLIAM WALTER FRANKO, JOHN<br>GUTH, PAUL GUTH, RICHARD<br>PATTERSON, JOHN J. DEBELLIS,<br>PHILLIP A WELKER, INDIVIDUALS;<br>DOE INDIVIDUALS 1-50; DOE<br>ENTITIES 1-50; DOE<br>CORPORATIONS 1-50; DOE<br>PARTNERSHIPS 1-50,<br><br>        Defendants.<br>_____ | CIVIL NO. 09-00002 JMS-RLP<br><br>FINDINGS AND RECOMMENDATION TO<br>GRANT IN PART AND DENY IN PART<br>PLAINTIFF'S MOTION FOR DEFAULT<br>JUDGMENT AGAINST DEFENDANT<br>WILLIAM WALTER FRANKO |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT WILLIAM WALTER FRANKO[1]

Before the Court is Plaintiff LEONA LYNDA TAYLOR's

("Plaintiff") Motion for Default Judgment Against Defendant

WALTER WILLIAM FRANKO ("Franko"), filed on February 22, 2011

herein.  Franko was served with a copy of the Motion but did not

file an opposition.

_____

[1]  Within fourteen (14) days after a party is served with a
copy of the Findings and Recommendation, that party may, pursuant
to 28 U.S.C. § 636(b)(1)(B), file written objections in the
United States District Court.  A party must file any objections
within the fourteen-day period allowed if that party wants to
have appellate review of the Findings and Recommendation.  If no
objections are filed, no appellate review will be allowed.

This matter came on for hearing before the Court on April 25, 2011. Richard C. DeWaele, Esq. appeared on behalf of Plaintiff; there was no appearance by or on behalf of Franko. Based on the following, and after careful consideration of the Motion, the supporting memorandum and declarations attached thereto, the arguments of counsel, and the record established in this action, the Court FINDS AND RECOMMENDS that the Motion be GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

On January 5, 2009, Plaintiff, by and through her attorney, Richard C. DeWaele, Esq., filed her Complaint against Franko, among other defendants. The Complaint alleged that Franko, whom Plaintiff had dated in Hawaii sometime between 2003 and February 2005, posted nude photographs of Plaintiff, without her consent, on several adult websites on the internet. Compl. ¶¶ 5, 8-9. Plaintiff, a Hawaii resident, discovered these postings in November 2007. Compl. ¶¶ 3, 8. In some instances, the photographs submitted to the adult websites allegedly informed the viewers of Plaintiff's name, occupation, state of residence, employer, email address, and telephone numbers, which resulted in Plaintiff receiving numerous calls, emails, and instant messages from individuals who viewed the adult websites and were seeking sex. Compl. ¶ 10.

Based on these allegations, Plaintiff asserts the following claims for relief: Invasion of Privacy (Count I); Public Disclosure of Private Facts (Count II); Negligent and Intentional Infliction of Emotional Distress (Count III); Defamation of Character (Count IV); and Punitive Damages (Count V).

On April 9, 2009, Plaintiff filed a Declaration of Richard C. DeWaele, which attached the Affidavit of Thomas Moore declaring that he personally served Franko with the Summons in the above-entitled matter on February 3, 2009. The Summons was served on Franko in Saint Louis, Missouri, where he resides. Compl. ¶ 4. The clerk entered default against Franko pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP") on the same day.

On February 22, 2011, Plaintiff filed the instant Motion for Default Judgment against Franko, which was served on Franko and his former attorney, David Simkins, Esq., via U.S. Mail, to addresses in Saint Louis, Missouri.[2] Plaintiff's Complaint seeks to recover general damages of $1,000,000.00, prejudgment interest of ten percent (10%) for three years in the

---

[2] According to Plaintiff, Mr. Simkins represented Franko in a telephone mediation (from Saint Louis, Missouri) through the offices of Michael Nauyokas (located in Honolulu, Hawaii) in or around September/October 2009, following the clerk's entry of default against Franko.

amount of $300,000.00, attorneys' fees totaling $5,000.00, and costs of $920.00.[3]

ANALYSIS

**A.   Legal Standard for Entry of Default Judgment**

Default may be entered by the clerk if the defendant has "failed to plead or otherwise defend" within the permitted time.  Fed. R. Civ. P. 55(a).  Under FRCP 55(b)(1), the clerk of the Court may enter default judgment for the plaintiff if the defendant has defaulted by failing to appear and plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the court for default judgment.  Fed. R. Civ. P. 55(b)(2).

The grant or denial of a motion for the entry of default judgment is within the discretion of the court.  Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986).  However, default judgments are ordinarily disfavored, and cases should be decided upon their merits wherever reasonably possible.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  Thus, entry of default does not entitle the non-defaulting party

---

[3]   The Court notes that Plaintiff's Motion requests attorneys' fees in the amount of $8,000.00 but that the attached Memorandum in Support of Plaintiff's Motion as well as the Declaration of Richard C. DeWaele state that Plaintiff has incurred attorneys' fees in the amount of $5,000.00.

to a default judgment as a matter of right.  <u>Valley Oak Credit Union v. Villegas</u>, 132 B.R. 742, 746 (9th Cir. 1991).

The Ninth Circuit has indicated that a court should consider the following factors in exercising its discretion as to the entry of a default judgment:

     (1)   the possibility of prejudice to the plaintiff;

     (2)   the merits of the plaintiff's substantive claim;

     (3)   the sufficiency of the complaint;

     (4)   the sum of money at stake in the action;

     (5)   the possibility of a dispute concerning material facts;

     (6)   whether the default was due to excusable neglect; and

     (7)   the strong policy underlying the FRCP favoring decisions on the merits.

<u>Eitel</u>, 782 F.2d at 1471-72.

Upon default, the general rule of law is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)). Under this standard, the well-pled allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which she is entitled.  <u>Fair Hous. of</u>

Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Furthermore,
"necessary facts not contained in the pleadings, and claims which
are legally insufficient, are not established by default."
Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir.
1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir.
1978)).

**B.    Jurisdiction**

       As a preliminary matter, this Court has an affirmative
obligation to determine whether or not it has jurisdiction over
both the subject matter of this action as well as the defendant.
See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid
entering a default judgment that can later be successfully
attacked as void, a court should determine whether it has the
power, i.e., the jurisdiction, to enter the judgment in the first
place.").

       **1.    Subject Matter Jurisdiction**

       Plaintiff is a resident of Honolulu, Hawaii; Franko
resides in the state of Missouri.  Compl. ¶¶ 3-4.  Because the
parties are residents of different states and the amount in
controversy exceeds $75,000.00, this Court has diversity
jurisdiction over this matter.  See 28 U.S.C. § 1332.

       **2.    Personal Jurisdiction**

       Personal jurisdiction in this District is proper
provided it is consistent with Hawaii's long-arm statute and it

comports with due process of law.  <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1021-22 (9th Cir. 2008).  Because Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, reaches to the full extent permitted by the United States Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction.  <u>Television Events & Mktg., Inc. v. Amcon Distrib. Co.</u>, 416 F. Supp. 2d 948, 958 (D. Haw. 2006) (citing <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800-01 (9th Cir. 2004)).

For due process to be satisfied, a defendant must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 315 (1945)).  To meet this requirement, the Court must have either general jurisdiction or specific jurisdiction over the defendant.  <u>Doe v. Am. Nat'l Red Cross</u>, 112 F.3d 1048, 1050 (9th Cir. 1997).

### a.  General Jurisdiction

General jurisdiction exists when the defendant is either (1) domiciled in the forum state or (2) his activities there are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities.  <u>Id.</u>; <u>Panavision Int'l L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir.

1998) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 414-16 (1984)).

According to the Ninth Circuit, "[t]his is a very high standard in practice." <u>Fields v. Sedgwick Associated Risks, Ltd.</u>, 796 F.2d 299, 301 (9th Cir. 1986); <u>Menken v. Emm</u>, 503 F.3d 1050, 1056-57 (9th Cir. 2007) ("Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' for all purposes, a forum may only exercise 'specific' jurisdiction"). <u>See, e.g.</u>, <u>Helicopteros</u>, 466 U.S. at 414 (Texas did not have general jurisdiction over a foreign corporation which sent one of its officers to negotiate a contract, sent personnel to train there, accepted checks drawn from a Texas bank, and purchased equipment from a Texas firm); <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1330-31 (9th Cir. 1984) (no general jurisdiction existed in Arizona over defendants who visited Arizona several times, purchased materials in the state, solicited an agreement in the state that included Arizona choice of law and forum provisions, and did a great deal of communicating to Arizona).

The Court finds that it does not have general jurisdiction over Franko.  First, Franko is domiciled in Missouri, not Hawaii.  Second, his activities are not substantial or continuous and systematic.  Although Franko dated Plaintiff and took nude photographs of her while in Hawaii, these acts

simply do not meet the high standard set forth by the Ninth
Circuit for the exercise of general jurisdiction.  Moreover,
there is no evidence in the record that Franko posted the nude
photographs of Plaintiff while located in Hawaii or that his IP
address was registered within the state.  For these reasons, the
Court finds that general jurisdiction does not exist in this
case.

### b.    Specific Jurisdiction

The Ninth Circuit applies a three-part test to
determine whether specific jurisdiction exists: (1) the defendant
has performed some act or consummated some transaction within the
forum or otherwise purposefully availed himself of the privileges
of conducting activities in the forum, (2) the claim arises out
of or results from the defendant's forum related activities, and
(3) the exercise of jurisdiction is reasonable.  Boschetto, 539
F.3d at 1021.  If any of the three requirements is not met,
jurisdiction in the forum would deprive the defendant of due
process of law.  Pebble Beach Co., 453 F.3d at 1155 (quoting
Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th
Cir. 1995)).

### i.    Purposeful Availment

The purposeful availment requirement ensures that a
nonresident defendant will not be haled into court based upon
"random, fortuitous or attenuated" contacts with the forum state.

Panavision Int'l, 141 F.3d at 1320 (quoting Burger King Corp. V.
Rudzewicz, 471 U.S. 462, 475 (1985)).  This requirement is
satisfied if the defendant "has taken deliberate action" toward
the forum state.  Id. (citing Ballard v. Savage, 65 F.3d 1495,
1498 (9th Cir. 1995)).  It is not required that a defendant have
physical contacts with the forum, so long as his efforts are
"purposefully directed" toward forum residents.  Id.

     In the context of torts related to cyberspace or the
internet, the purposeful availment requirement can be satisfied
by the "effects doctrine."  Id. at 1321.  Under this doctrine,
personal jurisdiction may attach on the basis of: "(1)
intentional actions (2) expressly aimed at the forum state (3)
causing harm, the brunt of which is suffered -- and which the
defendant knows is likely to be suffered -- in the forum state."
Id. (quoting Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482,
1486 (9th Cir. 1993)).

     In the present case, Franko took nude photographs of
Plaintiff while in Hawaii and intentionally posted them on at
least eleven adult websites.  Compl. ¶ 8.  This conduct was
clearly aimed at Hawaii, because in some cases, the photographs
informed the viewers of Plaintiff's personal contact information,
including Plaintiff's state of residence, email address, and
telephone numbers.  Compl. ¶ 10.  Given these actions, Franko
knew that the Plaintiff would likely suffer harm in the forum

state.  Accordingly, the Court concludes that Franko's contacts with Hawaii are sufficient to show purposeful availment under the effects doctrine.

### ii.  Claims Arise Out of Forum Related Activities

The second requirement for specific jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities.  <u>Panavision, Int'l</u>, 141 F.3d at 1322 (citing <u>Ziegler v. Indian River Cnty.</u>, 64 F.3d 470, 474 (1995)).  This requires a showing that the plaintiff would not have been injured "but for" the defendant's conduct directed toward forum.  <u>Id.</u>

Here, Franko's contacts with the forum are his taking of nude photographs of Plaintiff while in Hawaii and his posting of said photographs along with Plaintiff's personal contact information on adult websites directed toward Plaintiff and other Hawaii residents, among other viewers.  The Court finds that "but for" Franko's activity, Plaintiff would not have been injured. Therefore, the Court concludes that the second requirement for specific jurisdiction is satisfied.

### iii. Reasonableness of Exercise of Jurisdiction

Even if the first two requirements are met, in order to satisfy due process, the exercise of personal jurisdiction must be reasonable.  <u>Id.</u> (citing <u>Ziegler</u>, 64 F.3d at 474-75).  For jurisdiction to be reasonable, it must comport with "fair play

and substantial justice.  Id. (quoting Burger King, 471 U.S. at
476-77).  To determine reasonableness, the Court must balance
seven factors: (1) the extent of a defendant's purposeful
interjection into the forum state's affairs; (2) the burden on
the defendant of defending in the forum; (3) the extent of
conflict with the sovereignty of the defendant's state; (4) the
forum state's interest in adjudicating the dispute; (5) the most
efficient judicial resolution of the controversy; (6) the
importance of the forum to the plaintiff's interest in convenient
and effective relief; and (7) the existence of an alternative
forum.  Core-Vent Corp., 11 F.3d at 1487-88 (citing Paccar Int'l,
Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d 1058, 1065
(9th Cir. 1985)).

        The Court finds that the reasonableness factors
enumerated in Core-Vent Corp. weigh in favor of finding that the
exercise of jurisdiction comports with fair play and substantial
justice in this case.

        First, "[e]ven if there is sufficient 'interjection'
into the state to satisfy the purposeful availment prong, the
degree of interjection is a factor to be weighed in assessing the
overall reasonableness of jurisdiction under the reasonableness
prong."  Id. at 1488 (quoting Ins. Co. of N. Am. v. Marina Salina
Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981)).  Here, the degree of
interjection was substantial.  Franko's acts were aimed at

                                12

Plaintiff in Hawaii.  He posted nude photographs of Plaintiff along with her personal contact information knowing that this would likely injure Plaintiff in Hawaii.  As a result, the purposeful interjection factor weighs strongly in favor of the Court's exercise of personal jurisdiction.

Second, while the burden on Franko, as a resident of Missouri, to litigate in Hawaii is significant, the inconvenience is not so great as to deprive him of due process, particularly given Franko's purposeful availment to the forum.  See Panavision Int'l, 141 F.3d at 1323 (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'")).

Third, the sovereignty factor concerns the extent to which the district court's exercise of jurisdiction in Hawaii would conflict with the sovereignty of Missouri, Franko's state of domicile.  Core-Vent Corp., 11 F.3d at 1489.  Although this factor weighs slightly in Franko's favor, it is not sufficient to defeat the Court's exercise of personal jurisdiction.  See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003) ("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation

13

against a citizen from a sister state. . . Although this factor is important, it is not controlling.").

Fourth, Hawaii has a "strong interest in providing an effective means of redress for its residents who are tortiously injured." Resnick v. Rowe, 283 F. Supp. 2d 1128, 1141 (D. Haw. 2003) (quoting Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1070 (D. Haw. 2000)).  As Plaintiff is a Hawaii resident, this factor favors finding jurisdiction.

Fifth, consideration of the most efficient judicial resolution is "no longer weighted heavily given the modern advances in communication and transportation." Panavision Int'l, 141 F.3d at 1323 (citing Caruth, 59 F.3d at 129).  In any event, due to the limited amount of evidence and few potential witnesses in the present litigation, this factor is neutral.

Sixth, in evaluating the convenience and effectiveness of relief for the plaintiff, the Ninth Circuit has given little weight to the plaintiff's inconvenience.  Id. at 1324 (citing Ziegler, 64 F.3d at 476).  Although it may be somewhat more costly and inconvenient for Plaintiff to litigate in another forum, this factor is essentially neutral.

Finally, Franko has not come forward to request an alternative forum.  This factor is neutral.

Balancing these seven factors, the Court concludes that the exercise of personal, specific jurisdiction over Franko is reasonable.

## C.   *Eitel* Factors

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate under the Eitel factors outlined above.   The Court will address each factor in turn.

### 1.   Factor One: The Possibility of Prejudice to Plaintiff

The first factor set forth by the Ninth Circuit in Eitel considers whether the plaintiff would suffer prejudice if default judgment is not entered.   See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).   Here, absent entry of default judgment, Plaintiff would be without another recourse for recovery.   Accordingly, the first Eitel factor favors the entry of default judgment.

### 2.   Factors Two and Three: Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The Court considers the merits of Plaintiff's substantive claims and the sufficiency of the Complaint together because of the relatedness of the two inquiries.   For these factors, the Court must determine whether the allegations in the Complaint are sufficient to state a claim that supports the

15

relief sought.  <u>Danning</u>, 572 F.2d at 1388.  The Court will review each of Plaintiff's alleged causes of action below.

> ### a.   Count I: Invasion of Privacy

The Restatement (Second) of Torts §§ 652A-E (1977), recognizes a tort of invasion of privacy.  <u>Mehau v. Reed</u>, 76 Hawai'i 101, 111, 869 P.2d 1320, 1330 (1994).  The Restatement categorizes the tort into four types: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) false light.  <u>Id.</u>; <u>Chapman v. Journal Concepts, Inc.</u>, 528 F. Supp. 2d 1081, 1099 (D. Haw. 2007); <u>accord Brende v. Hara</u>, 113 Hawai'i 424, 430, 153 P.3d 1109, 1115 (2007) (stating that the right of privacy contained in article I, section 6 of the Hawaii Constitution encompasses the common law right of privacy, which includes "invasion of [the individual's] private affairs, public disclosure of embarrassing facts, and publicly placing the individual in a false light").

It is possible for privacy to be invaded by the same act or by a series of acts in two or more of the ways stated in §§ 652A-E.  Restatement (Second) of Torts § 652A cmt. d (1977).  When this occurs, the plaintiff may maintain his or her action for invasion of privacy upon any or all of the grounds available to him or her, but may have only one recovery of damages upon one or all of the different grounds.  <u>Id.</u>

Here, other than unreasonable publicity given to the other's private life,[4] Plaintiff has failed to identify which of the remaining types of invasion of privacy claims she is alleging in her Count I.  Compl. ¶¶ 12-13.  Although the Court is concerned that such inartful pleading may itself be insufficient to provide Franko with proper notice of Plaintiff's invasion of privacy claim as required by FRCP 8(a), nevertheless, the Court has considered the merits of the claim and finds that Plaintiff failed to state a claim for any of the remaining types of invasion of privacy.

First, a claim for unreasonable intrusion into the seclusion of another consists of three elements: (1) intentional intrusion, physically or otherwise, (2) upon the solitude or seclusion of another or his private affairs or concerns, (3) that would be highly offensive to a reasonable person.  <u>See</u> Restatement (Second) of Torts § 652B (1977).  In the present case, Plaintiff admits that she allowed Franko to photograph her in the nude.  Compl. ¶ 6.  Plaintiff fails to point out, and the Court does not find, that Franko intentionally intruded upon Plaintiff's private affairs.  <u>See, e.g.</u>, Restatement (Second) of Torts § 652B cmt. b (1977) (citing physical intrusion into

---

⁴ The claim for invasion of privacy due to unreasonable publicity given to the other's private life has also been described as a claim for public disclosure of private facts, which is the basis for Plaintiff's Count II and will be discussed in detail below.  <u>See</u> <u>Chapman</u>, 528 F. Supp. 2d at 1098.

plaintiff's home, using mechanical aids such as wire taps or binoculars to overhear or oversee plaintiff's private affairs, or opening plaintiff's personal mail as examples of the tort of intrusion upon seclusion).

Second, a person who appropriates to his or her own use or benefit the name or likeness of another is subject to liability for invasion of privacy.  <u>See</u> Restatement (Second) of Torts § 652C (1977).  The Court finds that nothing in the record gives rise to an appropriation claim in this case, as Plaintiff does not allege that Franko was using her name or likeness for his benefit.  <u>See, e.g.</u>, <u>id.</u> at cmt. b (stating that the common form of appropriation is use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose).

Finally, a false light claim involves: (1) publicity of a matter concerning another, (2) in a false light, (3) which would be highly offensive to a reasonable person, (4) when the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  <u>See</u> Restatement (Second) of Torts § 652E (1977).  Here, the Court finds that Plaintiff failed to allege that Franko publicized Plaintiff in a false light.  Plaintiff does not claim that the nude photographs Franko posted online were not actually her.  Indeed, although Plaintiff claims that

Franko posted untruthful statements regarding Plaintiff's sexuality and preferences, these allegations were made only in support of Plaintiff's defamation claim (Count IV) and were not incorporated into her invasion of privacy claim (Count I).  See Compl. ¶ 19.

For these reasons, the Court finds that Plaintiff failed to state a claim for invasion of privacy based upon an unreasonable intrusion upon the seclusion of another, appropriation of another's name or likeness, or false light theory.  Accordingly, the Court finds that default judgment should not enter as to Plaintiff's Count I.

### b.    Count II: Public Disclosure of Private Facts

To state a claim for invasion of privacy based upon a public disclosure of private facts, the plaintiff must show (1) public disclosure, (2) of private facts regarding the plaintiff, (3) that would be highly offensive to a reasonable person, and (4) are not of legitimate concern to the public.  See Restatement (Second) of Torts § 652D (1977); Chapman, 528 F. Supp. 2d at 1098.

The Court finds that Plaintiff's Complaint adequately alleges all elements of a claim for public disclosure of private facts.  First, Franko publicized information regarding Plaintiff on several adult websites which were available to third party viewers.  See Restatement (Second) of Torts § 652D cmt. a (1977)

19

("publication" is "any communication by the defendant to a third person").  Second, this information, which included nude photographs of Plaintiff and Plaintiff's personal contact information, certainly constituted private facts that were not of public concern.  <u>See</u> <u>id.</u> at cmt. b ("Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family and close friends.").  Finally, Franko's conduct clearly meets the standard of being highly offensive to the reasonable person.  <u>See</u> <u>id.</u> at cmt. c ("It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.").  Therefore, the Court finds that the second and third <u>Eitel</u> factors favor the entry of default judgment as to Plaintiff's Count II.

> **c.   Count III: Negligent and Intentional Infliction of Emotional Distress**

In order to prove the tort of intentional infliction of emotional distress ("IIED") under Hawaii law, the plaintiff must show: (1) the act that caused the harm was intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme emotional distress to another.  <u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1235 (D. Haw. 2010) (citing <u>Young v. Allstate Ins. Co.</u>, 119 Hawai'i 403, 429, 198 P.3d 666, 692

(2008)).  This tort requires conduct "exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind."  Id. (quoting Hac v. Univ. of Haw., 102 Hawai'i 92, 106, 73 P.3d 46, 60 (2003)).

A plaintiff may recover for negligent infliction of emotional distress ("NIED"), on the other hand:

> absent any physical manifestation of his or her psychological injury or actual physical presence within a zone of danger, where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case . . . Thus, an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles.

Id. (quoting Kaho'ohanohano v. Dep't of Human Servs., 117 Hawai'i 262, 306-07, 187 P.3d 538, 582-83 (2008)).  Further, the Hawaii Supreme Court has consistently held that the plaintiff must establish some predicate injury either to property or to another person in order to recover for NIED.  Id.  Although the general rule is that there must be physical injury to someone, an exception exists in cases that present "unique circumstances, which provide the requisite assurance that plaintiff's psychological distress is trustworthy and genuine."  Id. (quoting Doe Parents No. 1 v. Dep't of Educ., 100 Hawai'i 34, 69, 58 P.3d 545, 580 (2002)).

21

The Court finds that Plaintiff sufficiently states a claim for both IIED and NIED.  With respect to IIED, as previously stated, Franko took nude photographs of Plaintiff and intentionally posted them, along with Plaintiff's personal contact information, on at least eleven adult websites. Compl. ¶¶ 8-10.  This conduct was clearly outrageous and beyond the bounds usually tolerated by a decent society.  See id. (quoting Young, 119 Hawai'i at 429-30, 198 P.3d at 692-93) (stating a claim IIED where "average members of our community might indeed exclaim, 'Outrageous.'").  Finally, in regards to both IIED and NIED, Plaintiff has alleged that Franko's conduct caused her extreme emotional psychological distress.  Compl. ¶ 11.  Accordingly, the Court finds that the second and third Eitel factors favor the entry of default judgment as to Plaintiff's Count III.

### d.    Count IV: Defamation of Character

To prove defamation under Hawaii law, the plaintiff must establish four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) the publisher was negligent; and (4) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication. Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 732 F. Supp. 2d 1107, 1123 (D. Haw. 2010) (citing Wilson v. Freitas, 121

Hawai'i 120, 128, 214 P.3d 1110, 1118 (App. 2009)).  "A
communication is defamatory when it tends to harm the reputation
of another as to lower him in the estimation of the community or
deter third persons from associating or dealing with him."  Id.
(quoting Fernandes v. Tenbruggencate, 65 Haw. 226, 228, 649 P.2d
1144, 1147 (1982)).  Whether a communication is defamatory
"depends, among other factors, upon the temper of the times, the
current of contemporary public opinion, with the result that
words, harmless in one age, in one community, may be highly
damaging to reputation at another time or in a different place."
Id.

        The Court finds that Plaintiff has adequately alleged a
defamation claim.  Plaintiff alleges that Franko falsely informed
viewers of the adult websites that Plaintiff is bisexual and does
not have a preference as to age, race, and marital status.
Compl. ¶ 19.  Such statements are sufficient to state a claim for
defamation because they may be damaging to Plaintiff's reputation
with respect to her chastity and sexual orientation.  See 50 Am.
Jur. 2d Libel & Slander § 185 (2011) (civil defamation claim
exists for words falsely imputing unchastity to a woman); 50 Am.
Jur. 2d Libel & Slander § 191 (2011) (false accusation of
homosexuality is reasonably susceptible to a defamatory meaning);
Restatement (Second) Torts § 574 (1977) (one who publishes a
slander that imputes serious sexual misconduct to another is

subject to liability).  Thus, the Court finds that the second and third *Eitel* factors favor the entry of default judgment as to Plaintiff's Count IV.

### e.   Count V: Punitive Damages

Although Plaintiff's Complaint alleges a claim for punitive damages, Plaintiff's Motion does not request such relief.  Additionally, at the hearing on Plaintiff's Motion, Plaintiff's attorney confirmed that Plaintiff was not seeking default judgment as to this claim.  Accordingly, the Court finds that default judgment should not enter as to Plaintiff's Count V.

### 3.   Factor Four: Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  In this case, Plaintiff seeks a significant amount of general damages, i.e., $1,000,000.00.  However, Plaintiff's damages request is tailored to Franko's specific wrongful conduct, which could result in a broad range of monetary awards, including an award much lower than the amount Plaintiff seeks.[5]  Under these circumstances, the Court concludes that this factor does not weigh heavily in the *Eitel* analysis here.

---

[5]  Whether Plaintiff is entitled to an award of this size is a different issue, which the Court believes would be more appropriately decided by the District Court following an evidentiary hearing in the merits, as discussed in greater detail below.  *See infra* Section C.4.

### 4.   Factor Five: Possibility of Dispute Concerning Material Facts

As to the fifth <u>Eitel</u> factor, as previously stated, upon entry of default, the well-pled factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  <u>TeleVideo Sys., Inc.</u>, 826 F.2d at 917-18. Franko has been given a fair amount of time to answer Plaintiff's Complaint and deny that he posted nude photographs of Plaintiff along with Plaintiff's personal contact information, without her consent, on several adult websites; Franko, however, has not done so.[6]  Because no dispute has been raised regarding Plaintiff's material factual allegations, the Court finds that this factor favors the entry of default judgment.

### 5.   Factor Six: Whether Default was Due to Excusable Neglect

Upon review of the record, the Court finds that Franko's default was not the result of excusable neglect. Plaintiff personally served Franko with the Summons in this matter on February 3, 2009.  Later that year, Franko and his former attorney participated in the telephone mediation of this

---

[6]   It should also be noted that at the hearing on this Motion, Plaintiff's counsel represented to the Court that Franko's defense at the 2009 telephone mediation was based primarily upon Franko's inability to pay a judgment or settlement, and not upon a dispute concerning the material facts of the case.  Indeed, according to Plaintiff's counsel, Franko subsequently failed to pay the mediator for his services.

case.  Following the unsuccessful mediation, Franko neither moved
to set aside the clerk's entry of default nor filed a response to
Plaintiff's Complaint.  In addition, Plaintiff served Franko by
mail with notice of the instant Motion for Default Judgment on
February 22, 2011.

Despite ample notice of this lawsuit and Plaintiff's
intention to seek a default judgment, Franko has not appeared in
this matter to date.  Thus, the record suggests that Franko's
default was not the result of any excusable neglect, but rather
due to Franko's conscious and willful decision not to defend this
action.  Consequently, this factor favors the entry of default
judgment.

      **6.    Factor Seven: Policy Favoring Decisions on the Merits**

The Court next turns to the seventh and final _Eitel_
factor.  Franko's failure to answer Plaintiff's Complaint makes a
decision on the merits impractical, if not impossible.  Under
FRCP 55, "termination of a case before hearing the merits is
allowed whenever a defendant fails to defend an action."
_PepsiCo., Inc._, 238 F. Supp. 2d at 1177; _see also_ _Philip Morris_
_USA, Inc. v. Castworld Prods., Inc._, 219 F.R.D. 494, 501 (C.D.
Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b)
indicates that the seventh _Eitel_ factor is not alone
dispositive").  In this present case, Franko has likewise failed
to defend this action and has consequently rendered adjudication

26

on the merits before this Court impracticable, if not impossible.
Therefore, the seventh *Eitel* factor does not preclude this Court
from entering default judgment against Franko.

### 7.   Totality of *Eitel* Factors

Upon consideration of the foregoing *Eitel* factors, the
Court finds that, as a whole, these factors weigh in favor of
entering default judgment in Plaintiff's favor and against Franko
as to Count II (Public Disclosure of Private Facts), Count III
(Negligent and Intentional Infliction of Emotional Distress), and
Count IV (Defamation of Character) of Plaintiff's Complaint.  The
Court further finds that the *Eitel* factors weigh against entering
default judgment as to Count I (Invasion of Privacy) and Count V
(Punitive Damages) of the Complaint.

### D.   Damages and Relief Sought

### 1.   General Damages

In Plaintiff's Motion, Plaintiff "conservatively
estimates" her general damages to be $1,000,000.00.  See
Plaintiff's Motion at 10.  In support of this assertion,
Plaintiff's attorney attached his declaration stating that he has
"conservatively estimated plaintiffs [sic] general damages for
mental anguish and emotional suffering to be approximately
$1,000,000." See Declaration of Richard C. DeWaele ("DeWaele
Dec.") ¶ 4.  Plaintiff's attorney further states that "[a]n
analysis of jury verdicts for the legal wrongs claimed herein

27

will be filed with the court prior to the hearing on this
matter[.]" Id.  Plaintiff also filed a declaration stating that
"[p]rior to the hearing in this matter I will produce medical and
psychiatric records which moralize [sic] the physical and
emotional suffering I have undergone as a direct result of
FRANKO'S actions."  See Declaration of Leona Lynda Taylor ¶ 13.

        The Court did not receive either a jury verdict
analysis or any medical records from Plaintiff prior to or at the
hearing on Plaintiff's Motion.  As a result, to date, the Court
has nothing more than Plaintiff and her attorney's bald and
wholly unsupported assertion that her general damages are worth
$1,000,000.00 to determine an award for general damages in this
case.  Therefore, the Court finds that it is unable to accurately
assess the value of Plaintiff's general damages claim based
solely upon the current evidentiary record.

        2.   **Prejudgment Interest**

        Plaintiff's Motion further requests prejudgment
interest of ten percent (10%) for three years in the amount of
$300,000.00.  However, Plaintiff fails to cite any legal
authority entitling her to prejudgment interest for the requested
time period.  While the Court can surely surmise the legal basis
for prejudgment interest, in a motion for default judgment, it is
up to Plaintiff to establish the amount of her damages.  See Fair
Hous. of Marin, 285 F.3d at 906.   On this basis, the Court finds

that the requested prejudgment interest has not been proven at this time.

### 3.   Attorneys' Fees and Costs

Finally, Plaintiff asks to be awarded $5,000.00 in attorneys' fees and $920.00 in costs.  Similar to Plaintiff's general damages claim, Plaintiff's attorney stated in his declaration that "[a] breakdown of said [reasonable and necessary attorneys' fees and costs] will be filed with the court prior to the hearing in this matter."  See DeWaele Dec. ¶ 3.  Again, however, Plaintiff's attorney failed to provide the Court with such a breakdown of expenses.  Thus, once more, the Court finds that it is unable to accurately assess the value of Plaintiff's request for attorneys' fees and costs given the state of the present evidentiary record.

### 4.   Evidentiary Hearing

The Court may conduct hearings or make referrals when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.  Fed. R. Civ. P. 55(b)(2).  Due to Plaintiff's complete failure to provide the Court with substantive evidence to support its damages and other claims for relief, the Court finds that it is necessary to conduct an evidentiary hearing on the merits pursuant to FRCP 55(b)(2)(B).  As it is the Court's

understanding that this case is going to proceed to trial against another defendant, Phillip A. Welker, the Court recommends that the District Court set the evidentiary hearing to be held at that time.[7]

## CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that Plaintiff's Motion for Default Judgment Against Defendant William Walter Franko, filed February 22, 2011, be GRANTED IN PART AND DENIED IN PART as follows:

(1)  Default judgment be entered in Plaintiff's favor and against Franko as to Count II (Public Disclosure of Private Facts), Count III (Negligent and Intentional Infliction of Emotional Distress), and Count IV (Defamation of Character)of Plaintiff's Complaint;

(2)  Default judgment be denied as to Count I (Invasion of Privacy) and Count V (Punitive Damages) of Plaintiff's Complaint; and

(3)  The District Court set an evidentiary hearing on the merits to determine the amount of Plaintiff's general damages as to Counts II, III, and IV of Plaintiff's Complaint, prejudgment interest, and attorneys' fees and costs, if any, to

---

[7] Trial against Defendant Welker is currently scheduled to commence on June 7, 2011 before District Judge J. Michael Seabright.

be held when the case against Defendant PHILLIP A. WELKER

proceeds to trial.

        IT IS SO FOUND AND RECOMMENDED.

        DATED AT HONOLULU, HAWAII, April 29, 2011



                                      Richard L. Puglisi
                                      United States Magistrate Judge


TAYLOR V. FRANKO, ET AL.; CIVIL NO. 09-00002 JMS-RLP; FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT WILLIAM WALTER
FRANKO