IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LEONA LYNDA TAYLOR, Plaintiff, vs. WILLIAM WALTER FRANKO, Defendant. | ) | CIVIL NO. 09-00002 JMS/RLP<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## I. INTRODUCTION

Plaintiff Leona Lynda Taylor ("Plaintiff") brought this action against a number of Defendants, including William Walter Franko ("Franko"),[1] after private nude photographs of her were posted on various adult Websites without her permission. Franko, a former friend of Plaintiff, allegedly posted these photographs, along with Plaintiff's contact information, after Plaintiff rejected his marriage proposal and ultimately married another man.

Although served, Franko did not participate in this action and Plaintiff therefore sought default judgment against him. On May 2, 2011, U.S. Magistrate

---

[1] Plaintiff also named as Defendants John Guth, Paul Guth, Richard Patterson, John Debellis, and Phillip Welker. Plaintiff's claims against John Guth, Paul Guth, Richard Patterson, John Debellis were dismissed on February 17, 2009, Doc. No. 14, and Plaintiff's claims against Phillip Welker were dismissed on June 9, 2011. Doc. No. 71.

Judge Richard L. Puglisi entered his Findings and Recommendation to Grant in Part and Deny in Part Plaintiff's Motion for Default Judgment Against Franko (the "May 2 F&R"). Doc. No. 57. The May 2 F&R recommended that the court enter default on Plaintiff's claims in her First Amended Complaint ("FAC") against Franko for Public Disclosure of Private Facts (Count II), Negligent and Intentional Infliction of Emotional Distress (Count III), and Defamation of Character (Count IV). The May 2 F&R further recommended that the court hold an evidentiary hearing on the merits to determine the amount of Plaintiff's general damages, prejudgment interest, and attorneys' fees and costs (Plaintiff did not seek default judgment on her request for punitive damages). The court adopted the May 2 F&R on May 26, 2011, Doc. No. 63, and conducted an evidentiary hearing on damages on June 9, 2011. On June 30, 2011, Plaintiff submitted her Proposed Findings of Fact and Conclusions of Law. Doc. No. 74.

Pursuant to Federal Rules of Civil Procedure 52(a) and 55(b)(2)(B), the following constitute the court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions"). To the extent any Findings as stated may also be deemed to be Conclusions, they shall also be considered Conclusions. Similarly, to the extent any Conclusions as stated may be deemed to be Findings, they shall also be considered Findings. *See In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262

(9th Cir. 1982).

## II. <u>FINDINGS OF FACT</u>

1. The following findings of fact are based on the evidence and testimony presented at the June 9, 2011 hearing, as well as the factual allegations of the FAC, which the court accepts as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). At the June 9, 2011 hearing, Plaintiff and Jennifer Davis, Plaintiff's daughter, testified. The court also admitted Plaintiff's exhibits 1-3, 6-10, and 12-14 under seal, and 4, 5, 15, and 16 not under seal.

2. From 2003 through 2004, Plaintiff allowed several photographs to be taken of herself, which depict Plaintiff both clothed and nude. Several photographs graphically depict Plaintiff engaged in sex acts and can best be described as "XXX." *See, e.g.*, Pl.'s Exs. 1-3, 6-10, 12-14. Plaintiff asserts that she took these photographs based on a counselor's suggestion to help her heal from childhood abuse and rape she experienced and to become more comfortable with her body.

3. In 2003, Plaintiff became acquainted with Franko, and they engaged in an intimate relationship up until November 2004. During their

relationship, Franko received copies of Plaintiff's photographs. Plaintiff never gave Franko permission to publish these photographs. Indeed, Franko was aware of Plaintiff's history of sexual abuse and body image problems such that Plaintiff asserts that Franko knew that distributing these photographs would hurt Plaintiff.

4. In November 2004, Plaintiff told Franko that she no longer wanted to be intimate with him; as a result, Plaintiff did not speak with Franko again until 2007. In the meantime, Plaintiff married in December 2005.

5. In November 2007, Plaintiff learned that Franko had distributed some of her photographs on the Internet without her permission. Specifically, Plaintiff received an Instant Message from a work acquaintance, asking if Plaintiff had posted pictures of herself on the Internet. After Plaintiff told him no, he sent her a link to a Website hosting an erotic amateur photograph contest. Some of Plaintiff's personal photographs, along with her name and contact information, were posted on the Website. *See* Pl.'s Ex. 2.

6. Plaintiff subsequently searched the Internet and found other Websites posting her personal photographs. For example, Franko posted additional photographs on a beastiality Website with the following statement falsely attributed to Plaintiff: "My name in Hono. I am bi-sexual and live in honolulu, hawaii. i am 50 y/o. i am an exhibitionist and enjoy all types of sex."

Pl.'s Ex. 3. Comments on the Website expressed, among other things, individuals' desires to be intimate with Plaintiff and see more explicit photographs of Plaintiff. *Id.*

7. Upon learning of these Websites, Plaintiff felt completely violated, humiliated, and devastated, especially given that much of the information provided about her sexual preferences were untrue. Beyond the humiliation, Plaintiff worried that these postings could affect her clearance at work with the U.S. Department of Fish and Wildlife.

8. In December 2007, Plaintiff broke out with shingles on her left leg. When she went for treatment, Plaintiff was so emotionally distressed that her doctor scheduled an emergency counseling session to help Plaintiff cope with the stress of dealing with this breach of privacy.

9. Plaintiff attended two counseling sessions in December 2007. During these sessions, Plaintiff was diagnosed with adjustment disorder with depressed mood. Plaintiff reported that as a result of the distress of dealing with these Websites posting her personal information and photographs, she had gained ten pounds, was experiencing decreased energy and mood, and had a low self-esteem. Her counselor ultimately stopped seeing Plaintiff, however, given the support Plaintiff received from her family and given the tools Plaintiff had

developed from previous counseling.  *See* Pl.'s Exs. 4, 5.

        10.    Shortly after the Internet postings began, Plaintiff began receiving Instant Messages and phone calls from individuals soliciting sex acts. These calls were precipitated by numerous Websites (Plaintiff has found a total of twenty-three) providing Plaintiff's personal information and encouraging individuals to contact her.

        11.    For example, one Website displaying Plaintiff's photographs included comments providing her name and asserting that Plaintiff "does occasionally meet with fans for fun."  Pl.'s Ex. 6; *see also* Pl.'s Ex. 7 (Website displaying Plaintiff's photographs disclosing that Plaintiff works at the "U.S. Department of Fish and Game.").  Another Website, posting "Fuck This Hot & Horny Mature Woman Tonight!!!", provides Plaintiff's work telephone number and states: "Hello gentlemen, Get the pleasure you need and the satisfaction you deserve.  Meet a hot and sexy mature woman who knows what you want -- and hot to give it to you.  No drama . . . No games . . . Just you and me baby."  Pl.'s Ex. 8 (ellipses in original); *see also* Pl.'s Ex. 9 (asserting that Plaintiff is "[s]till waiting for a visit or phone call to her at work").  A different Website, posting "Married woman looking for discreet men for kinky fun this weekend," asserts that Plaintiff is a "[m]arried woman here looking to try sex with other men."  Pl.'s Ex. 10.  A

Craigslist advertisement asserts that Plaintiff is contemplating a divorce, enjoys "oral, anal and BDSM [bondage and discipline, sadism and mashochism]," and is interested in a "no strings attached relationship for sex" with bi-sexual males, females or couples. Pl.'s Ex. 12. As a final example, a Website advertisement asserts that Plaintiff is interested in exploring "Bondage, Breast/Nipple Torture, Collar & Lead/Leash, Depilation/Shaving, Fisting, Role Play, Spanking, Voyeurism, Whipping, K-9, Exhibitionism." Pl.'s Ex. 13.

    12. Over this period of time, Plaintiff teleworked from home and therefore had her direct work phone forwarded to her home phone number. As a result of the Websites providing her direct work number, Plaintiff received numerous phone calls. From the end of 2007 through the beginning of 2008, Plaintiff received an average of three calls a day, five to six days a week; after eighteen months, the calls trickled down to two to three calls a week; and after an additional six months, Plaintiff received one call a month. The last phone call she received was in May 2010.

    13. Individuals also called other Department of Fish and Wildlife numbers trying to reach Plaintiff, resulting in her co-workers receiving lewd phone calls. Plaintiff felt humiliation and embarrassment in explaining these Websites and phone calls to her family and work.

14. As for her Instant Messages, Plaintiff acknowledged that she could have changed some of her contact information, but she ultimately chose not to because law enforcement told her that they could not help her and she wanted to gather evidence and learn where her photographs were posted so that she could have the photographs taken off the Internet. Despite her generally successful efforts, there are still two Websites that refuse to take the images down.

15. Beyond the phone calls and Instant Messages, Plaintiff was also approached by strangers seeking sexual relations who had seen her photographs on these Websites and recognized her.

16. Most individuals trying to reach Plaintiff as a result of these Websites were lewd, but Plaintiff was nonetheless fearful for at least two reasons. First, in August 2008, a man left a voice mail on Plaintiff's answering machine stating that he wants "to eat your fucking pussy stay you and I want to slit your fucking throat." Plaintiff was distressed to hear this message, but law enforcement told Plaintiff that they could not help her without more information. Second, Plaintiff was also fearful that Franko might physically harm her. According to Plaintiff, Franko ran several nightclubs and strip clubs and had an "enforcer" who Franko said would "take care" of an individual if that individual wronged Plaintiff.

17. Despite developing some coping mechanisms through earlier

therapy, Plaintiff struggled in dealing with this invasion of privacy and false statements about her sexual preferences given their extent and constancy. Plaintiff experienced a loss of dignity and self esteem, and felt withdrawn and frustrated. Plaintiff's daughter, Jennifer Davis, saw that Plaintiff would often cry, did not sleep well, ate sporadically, and did not want to interact with the outside world.

18. Over two and a half years, Plaintiff met with five different counselors six times each, and began taking antidepressants. *See, e.g.*, Pl.'s Exs. 15, 16. This was the first time Plaintiff took antidepressants, and she is still taking them.

## III. CONCLUSIONS OF LAW

19. Plaintiff seeks general damages, costs, and prejudgment interest.[2] The court addresses these requests in turn.

### A. General Damages

20. "[T]he general rule in measuring damages is to give a 'sum of money to the person wronged which as nearly as possible, will restore [her] to the position [she] would be in if the wrong had not been committed.'" *Nobriga v.*

[2] Although Plaintiff sought attorneys' fees in her Motion for Default Judgment against Franko, Plaintiff did not seek them in her Proposed Findings of Fact and Conclusions of Law. The court therefore addresses only those damages sought in her Proposed Findings of Fact and Conclusions of Law. If Plaintiff believes that her claims entitle her to attorneys' fees, Plaintiff may file an appropriate motion consistent with Local Rule ("LR") 54.3.

*Raybestos-Manhattan, Inc*., 67 Haw. 157, 162, 683 P.2d 389, 393 (1984) (citation omitted).

21. Plaintiff seeks general damages, which "are those damages which fairly and adequately compensate [Plaintiff] for any past, present, and reasonably probable future disability, pain, and emotional distress caused by the injuries/damages sustained." Haw. Civil Jury Instr. No. 8.3; *see also In re Haw. Fed. Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) ("General damages provide compensation for pain, suffering and emotional distress."); *Dunbar v. Thompson*, 79 Haw. 306, 315, 901 P.2d 1285, 1294 (Haw. App. 1995) ("General damages encompass all the damages which naturally and necessarily result from a legal wrong done. Such damages follow by implication of law upon proof of a wrong." (citation and internal quotations omitted)).

22. "Pain" need not be established through medical science, but rather is subjective and determined based on all the evidence presented. Haw. Civil Jury Instr. No. 8.4. "Emotional distress includes mental worry, anxiety, anguish, suffering, and grief, where they are shown to exist." *Id.* No. 8.5. As is evident from the definitions of these terms, general damages "embrac[es] items not subject to precise mathematical calculations." *See Tabieros v. Clark Equip. Co.*, 85 Haw. 336, 389-90, 944 P.2d 1279, 1332-33 (1997).

23. Based upon the evidence and testimony presented, the court finds that Plaintiff has suffered significant pain and emotional distress as a result of Franko publicizing Plaintiff's private photographs on adult Websites without her consent and providing false information to viewers regarding Plaintiff's sexual preferences. Franko's invasion of privacy and defamation of Plaintiff were both severe and ongoing -- the photographs are extremely graphic and of a personal nature, yet Franko posted the images and Plaintiff's contact information on at least twenty-three different Websites. As a result of Franko's actions, Plaintiff received numerous phone calls (averaging five or six a day for several months), Instant Messages, solicitations for sex acts by strangers that recognized her from the photographs, and even a death threat. Plaintiff suffered the further humiliation and pain of having to explain these photographs to her employer and family. Plaintiff's pain and suffering was compounded by her experiences of sexual abuse and feelings of low body image.

24. Beyond the damages she has already suffered, Plaintiff is still experiencing pain and emotional distress. Although Plaintiff has gotten her photographs removed from most Websites and the number of phone calls has significantly lessened over time, Plaintiff's photographs are still available on two Websites and she is still healing from this drastic invasion of privacy and

defamation of character.

25. The court therefore finds that Plaintiff is entitled to general damages in the amount of $425,000[3] to fairly and adequately compensate Plaintiff for her past, present, reasonably probable future pain and emotional distress on Plaintiff's claims against Franko for Public Disclosure of Private Facts (Count II), Negligent and Intentional Infliction of Emotional Distress (Count III), and Defamation of Character (Count IV).

**B.    Prejudgment Interest**

26. "Under [Hawaii Revised Statutes ("HRS") § 636-16, courts in all civil cases have the discretion to award pre-judgment interest." *Metcalf v. Voluntary Employees' Ben. Ass'n of Haw.*, 99 Haw. 53, 61, 52 P.3d 823, 831 (2002). Specifically, § 636-16 provides:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

---

[3] Plaintiff requested $1,000,000 in general damages. Based upon the evidence and testimony presented, however, the court finds that $425,000 is appropriate. Further, although Plaintiff relies on damages awards in sexual harassment cases, Plaintiff provides no detail as to the facts of these cases or the harm suffered by the victims. Given the specific facts of this case, these cases relied upon by Plaintiff are ultimately unhelpful in determining damages.

27. “Pre-judgment interest is designed ‘to allow the court to designate the commencement date of interest in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays.’” *Id.* (quoting *Schmidt v. Bd. of Dirs. of Ass’n of Apartment Owners of Marco Polo Apartments*, 73 Haw. 526, 534, 836 P.2d 479, 483 (1992)). The court has discretion to deny prejudgment interest where, for example, “(1) the defendant’s conduct did not cause any delay in the proceedings, (2) the plaintiff himself has caused or contributed to the delay in bringing the action to trial, or (3) an extraordinary damage award has already adequately compensated the plaintiff.” *Id.* (citation and quotation signals omitted).

28. Based on these considerations, the court exercises its discretion to deny Plaintiff’s request for prejudgment interest. Franko did not participate in this action such that any delay in obtaining judgment was due to Plaintiff. Further, the court has awarded Plaintiff general damages that takes into account the extent of Plaintiff’s injuries over the entire period of time since the torts were committed. Thus, there is no “injustice” that need be remedied through an award of prejudgment interest.

///

///

## C. Costs

29. Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." *See also* LR 54.2(a) (providing that "[t]he party entitled to costs shall be the prevailing party in whose favor judgment is entered, or shall be the party who prevails in connection with a motion listed in LR 54.2(b)").

30. Although Rule 54(d)(1) "creates a presumption in favor of awarding a prevailing party its costs other than attorneys' fees, [the district court has] the discretion to refuse to award such costs if the district court gives specific reasons explaining why the case is not ordinary and why it would be 'inappropriate or inequitable to award costs.'" *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1038 (9th Cir. 2005) (quoting *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591, 593 (9th Cir. 2000) (en banc)); *see also Quan v. Computer Scis. Corp.*, 623 F.3d 870, 889 (9th Cir. 2010).

31. Notwithstanding this discretion, the court may only tax the costs specified in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987); *see also Yasui v. Maui Elec. Co.*, 78 F. Supp. 2d 1124, 1126 (D. Haw. 1999). Specifically, § 1920 allows a prevailing party to seek:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of the title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

32. Beyond the requirement that the prevailing party seek costs enumerated in 28 U.S.C. § 1920, LR 54.2(c) requires that a party's Bill of Costs, among other things, (1) state separately and specifically each item of taxable costs claims; (2) be supported by a memorandum setting forth the grounds and authorities supporting the request; and (3) include an affidavit that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law.

33. Plaintiff is seeking $1,010.00 in costs. Although Plaintiff separately and specifically states each item of costs and also provides an affidavit asserting in conclusory fashion that the costs "were reasonably and necessarily incurred," Plaintiff provides no grounds and authorities supporting this request. From the court's own review, it appears that Plaintiff's request for costs includes several items that are not enumerated in 28 U.S.C. § 1920 including, among other things, Starbucks, parking, postage, and mediation costs.

34. Further, although § 1920 allows for copying costs, LR 54.2(f)(4) requires that the prevailing party provide specific information substantiating the request. Specifically, LR 54.2(f)(4) provides:

> The cost of copies necessarily obtained for use in the case is taxable provided the party seeking recovery submits an affidavit describing the documents copied, the number of pages copied, the cost per page, and the use of or intended purpose for the items copied. As of the effective date of these rules, the practice of this court is to allow taxation of copies at $.15 per page or the actual cost charged by commercial copiers, provided such charges are reasonable. The cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not taxable.

Although Plaintiff's copying costs might be higher than the court's usual practice of allowing $.15 per page given the photographic evidence that was presented to the court, Plaintiff has presented no documentation establishing the number of pages copied and/or the cost per page.

35. Given these deficiencies with Plaintiff's request for costs, the court DENIES Plaintiff's request as submitted, without prejudice to Plaintiff filing a post-judgment Bill of Costs that complies with Federal Rule of Civil Procedure 54(d) and LR 54.2.

## IV. CONCLUSION

As explained above, the court awards Plaintiff general damages in the amount of $425,000. The court denies Plaintiff's request for prejudgment interest,

and further denies without prejudice Plaintiff's request for costs. The Clerk of Court is directed to enter Judgment in favor of Plaintiff.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 11, 2011.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Taylor v. Franko*, Civ. No. 09-00002 JMS/RLP, Findings of Fact and Conclusions of Law